UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

RUSSELL GRANT FINNEGAN,

Plaintiff,

v.                                                    CAUSE NO. 3:23-CV-738-CCB-SLC

JENIFFER TETZLOFF, et al.,

Defendants.

## OPINION AND ORDER

Russell Grant Finnegan, a prisoner without a lawyer, filed a complaint. ECF 2.
"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however
inartfully pleaded, must be held to less stringent standards than formal pleadings
drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and
citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the
merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails
to state a claim upon which relief may be granted, or seeks monetary relief against a
defendant who is immune from such relief.

In the complaint, Finnegan asserts claims against 23 defendants in connection
with an order of protection proceeding in Case No. 66C01-1910-PO-74[1] and an indirect
contempt proceeding in *In re Finnegan*, 66C01-2106-MC-99 (Pulaski Cir. Ct. filed June 17,

---

[1] This case is not available on the online dockets for the Indiana courts. The case number provides
information about the date and the type of proceeding, including that it was initiated in October 2019 and
pertains to an order of protection. *See* Ind. Admin. R. 8. In any event, the specific nature of the order of
protection case is not material to resolving the claims asserted in the federal complaint.

2021).[2] On January 21, 2021, Finnegan submitted a filing in 66C01-1910-PO-74, which read as follows:

### Demand for Hearing

It's not rocket surgery or brain science. It's pretty simple. You pull your head out of your ass, put your penis pump back in your desk drawer and pull your pants up; possess and maintain something that someone can construe to be a definition of honor and integrity and set this matter for a hearing within 30 days pursuant to and required by IC 34-26-5-10(a)(2) and judicial canon 1.1. I don't like this shit anymore than anyone else, but if I am going to be subject to having any restraints to my liberty for two year, I will exercise my guaranteed rights by both the Constitution of the United States Amendments 5 and 14 and the Constitution of the State of Indiana Article 1, Sec. 12. This matter has never been heard before a court. It is to the dictates of my conscience and belief system and of right that I demand this matter be heard. Subject matter before the court is violence and harassment, not paternity, not parenting time, and not child support. Petitioner pleading protection from respondent at the same time pleading a want to meet respondent in private, lunacy! Petitioner has initiated and tried to communicate with respondent 5 times.

Based on this filing, Judge Kim Hall set a contempt hearing but later vacated it on the understanding that Finnegan would cease his offense behavior without the need for contempt proceedings. On June 7, 2021, Finnegan submitted another filing, which read as follows:

### Ultimatum

You have, Mr. Hall, until July 1, 2021, to afford me an opportunity to be heard in this matter in this Pulaski Circuit Court, Court room in open court.

If you come up short on this demand, I will:

---

[2] Pursuant to Fed. R. Evid. 201, the court take judicial notice of the dockets of the Indiana courts, which are available online at https://public.courts.in.gov/mycase/.

>  Appropriately by Indiana Rules of Procedure for Original Actions,
>  petition the Indiana Supreme Court for a writ of mandamus
>
>  Hold you in contempt
>
>  Report you to the Indiana Supreme Court Disciplinary Commission.
>
>  Do your duty, do your job, obey my command.

On June 11, Judge Hall determined that indirect contempt proceedings were warranted based on these filings. On July 20, 2021, Judge Hall appointed Judge John Potter to preside over the contempt proceeding. On August 10, 2021, Judge Potter quashed the subpoenas submitted by Finnegan and directed the clerk not to serve the subpoenas to the proposed witnesses. On August 13, 2021, Judge Potter held the contempt hearing, and Finnegan had standby counsel, Emily Waddle. Judge Potter found Finnegan in contempt of court and sentenced him to thirty days incarceration. He appointed Samantha Josyln as appellate counsel.

On October 13, 2021, Judge Potter restricted access to parts of the contempt hearing transcript to conceal the identity of the court reporter based on Finnegan's threatening letters to another court reporter. On December 6, 2021, Judge Potter allowed Samantha Joslyn to withdraw from representation due to Finnegan's meritless allegations regarding her honesty and integrity. According to the complaint, in October 2022, the order of protection expired without a hearing.

Against this backdrop, Finnegan asserts a claim against Judge Hall for denying him a hearing in 66C01-1910-PO-74 and for initiating contempt proceedings against him. He also asserts a claim against Judge Potter for his rulings and orders in the

3

contempt proceeding. "A judge has absolute immunity for any judicial actions unless the judge acted in absence of all jurisdiction." *Polzin v. Gage*, 636 F.3d 834, 838 (7th Cir. 2011). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 359 (1978).

Finnegan contends that Judge Hall and Judge Potter acted in absence of all jurisdiction. However, this is clearly not the case as Indiana law empowers trial courts to initiate contempt proceedings, to make contempt findings, and to issue punishment. Ind. Code § 34-47-3-5; *Knowles v. State*, 202 N.E.3d 1165, 1170 (Ind. Ct. App. 2023) ("Generally, a court's authority to find a person in contempt rests on whether a trial court has strictly complied with the statutory requirements set forth in the rule to show cause statute. Our courts have found, however, that strict compliance with the statute may be excused if it is clear the alleged contemnor nevertheless had clear notice of the accusations against him or her."). Trial courts are also empowered to set and continue hearings in order of protection cases. Ind. Code § 34-26-5-10. Even crediting the allegations that Judge Hall and Judge Potter made incorrect rulings, it would not have deprived them of all jurisdiction over Case No. 66C01-1910-PO-74 or Case No. 66C01-2106-MC-99. Moreover, though Judge Hall and Judge Potter may have been special judges, special judges also generally have jurisdiction over cases to which they are appointed. *See* Ind. R. Trial P. 79. As a result, judicial immunity bars any claims against Judge Hall and Judge Potter.

4

Finnegan asserts a claim against Administrative Clerk Behny for declining to summon witnesses on behalf of Finnegan and for certifying exhibits at Judge Potter's instruction. "When functions that are more administrative in character have been undertaken pursuant to the explicit direction of a judicial officer, we have held that that officer's immunity is also available to the subordinate." *Snyder v. Nolen*, 380 F.3d 279, 287 (7th Cir. 2004). "The policy justifying an extension of absolute immunity in these circumstances is to prevent court personnel and other officials from becoming a lightning rod for harassing litigation aimed at the court." *Id.* Because Administrative Clerk Behny acted at the express instruction of Judge Potter, judicial immunity also extends to the allegations against Administrative Clerk Behny, so Finnegan cannot proceed against this defendant.

Finnegan asserts a claim against Jennifer Tetzloff, who he alleges is a court administrator who served as the court reporter at the contempt proceeding but was not qualified to do so. The court cannot discern whether Tetzloff served as a court reporter at the express instruction of a judge, but it is also unclear how an unqualified court reporter could have harmed Finnegan as long as the transcript did not contain material errors. The only indication that the transcript was not accurate is the allegation that she redacted one of Finnegan's questions from the transcript at Judge Potter's direction. There is no indication that this redaction was a material error, and, even if it was, judicial immunity would extend to Tetzloff's removal of Finnegan's question from the transcript, so Finnegan cannot proceed against Tetzloff.

5

Next, Finnegan asserts a claim against Prosecutor Gaumer and Investigator Morphet for allowing Judge Hall and Judge Potter to initiate and make erroneous rulings in the contempt proceeding. It is entirely unclear as to how an investigator could have prevented the judges from initiating and making erroneous rulings. Conceivably, a prosecutor could have filed a motion or submitted an argument that changed the outcome of the contempt proceeding. However, Prosecutor Gaumer's conduct during the course of the contempt proceedings was subject to prosecutorial immunity. See *Rehberg v. Paulk*, 566 U.S. 356, 363 (2012) ("[A]ctions taken by prosecutors in their role as advocates . . . are absolutely immune from liability for damages under § 1983."); *Fields v. Wharrie*, 672 F.3d 505, 510 (7th Cir. 2012) ("A prosecutor is absolutely immune from suit for all actions and decisions undertaken in furtherance of his prosecutorial duties."); *Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003) ("These standards also apply to a prosecutor's acts in initiating civil proceedings as long the prosecutor is 'functioning in an enforcement role analogous to' his role in criminal proceedings."); *Bertha v. Hain*, 787 F. App'x 334, 338 (7th Cir. 2019) (finding prosecutorial immunity for a prosecutor initiating and trying a defendant on a contempt charge). Therefore, Finnegan may not proceed against these defendants.

Finnegan further asserts claims against Attorney Waddle, Attorney Vallejo, and Attorney Joslyn for not adequately representing him in the contempt proceedings or the related appeal. "[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal

proceeding." *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981).[3] Because Attorney Waddle, Attorney Vallejo, and Attorney Joslyn were not State actors, Finnegan may not proceed against them on a constitutional claim for damages.

Finnegan asserts a claim against a Jane Doe bailiff for assisting Judge Potter with exhibits and carrying a gun, a claim against a John Doe police officer for parking his vehicle in a handicap spot and providing security for Judge Potter, and a claim against six deputy sheriffs for providing security for Judge Potter. It is entirely unclear as to how these acts amounted to a violation of Finnegan's constitutional rights or otherwise harmed him. Therefore, Finnegan may not proceed against these defendants based on these allegations.

Additionally, Finnegan asserts a claim against Judge Welker for allowing Tetzloff to serve as a court reporter and a claim against Sheriff Richwine for instructing the six deputy sheriffs to provide security for Judge Potter. Because it is unclear as to how Tetzloff and the six deputy sheriffs violated Finnegan's constitutional rights or otherwise harmed Finnegan, he also may not proceed against these defendants based on these allegations.

Finnegan asserts a claim against Sheriff Richwine and Deputy Sheriff Foust for not reporting the alleged misconduct of Tetzloff, Judge Potter, and Attorney Joslyn to law enforcement on Finnegan's behalf. He similarly asserts a claim against County

---

[3] Indiana law does not characterize contempt proceedings as criminal in nature but as a "*sui generis* proceeding." *Finnegan v. State*, 240 N.E.3d 1265, 1270 (Ind. 2024). However, this characterization seems immaterial to the question of whether the public defenders were State actors during their representation of Finnegan during the contempt proceeding and the related appeal.

Commissioners Mellon, Loehmer, and McClure for not facilitating a report to law enforcement regarding the alleged misconduct of Judge Potter, Administrative Clerk Behny, Tetzloff, Deputy Sheriff Foust, Attorney Waddle, Prosecutor Gaumer, and Investigator Morphet. These allegations are confusing because sheriffs, presumably including Sheriff Richwine and Deputy Sheriff Foust, are law enforcement officers. *See* Ind. Code § 36-2-13-5 (listing county sheriff duties); *Severson v. Bd. of Trs. of Purdue Univ.*, 777 N.E.2d 1181, 1195 (Ind. Ct. App. 2002) (Office of the Sheriff is a person under Section 1983 "when the sheriff performs duties as the . . . chief law enforcement officer of the county."). Further, it is unclear why these defendants would have had any constitutional obligation to assist Finnegan with reporting the alleged misconduct. *See Archie v. City of Racine*, 847 F.2d 1211, 1220 (7th Cir. 1988) ("As a general matter, the State is under no constitutional duty to provide substantive services for those within its border."). Even if they had such an obligation, it is unclear how these defendants harmed Finnegan given his ability to report the alleged misconduct on his own, for example, by writing to other law enforcement agencies or to disciplinary commissions (as he threatened to do against Judge Hall), pursue an appeal (as he has done in several State court cases), or to file a federal lawsuit (as he has done here). Therefore, Finnegan cannot proceed against these defendants for not reporting or facilitating reports on the alleged misconduct to law enforcement.

In sum, this complaint does not state a claim for which relief can be granted. If Finnegan believes he can state a claim based on (and consistent with) the events described in this complaint, he may file an amended complaint because "[t]he usual

standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. He needs to write the word "Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

For these reasons, the court:

(1) **GRANTS** Russell Grant Finnegan until **June 10, 2025**, to file an amended complaint; and

(2) **CAUTIONS** Russell Grant Finnegan if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED on May 9, 2025

   /s/ *Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT